**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 48505**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: June 28, 2022** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| PATRICIA J. CROSBY-WHITE, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Gerald F. Schroeder, District Judge. Hon. Michael Oths, Magistrate.

Decision of the district court, on intermediate appeal from the magistrate court, affirming judgment of conviction for false reports, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

LORELLO, Chief Judge

Patricia J. Crosby-White appeals from a decision of the district court, on appeal from the magistrate court, affirming her judgment of conviction for false reports. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

The State charged Crosby-White with violating Boise City Code Section 5-2-9(B) by providing false information to officers during an investigation. The case proceeded to a jury trial. During jury selection, the State exercised all four of its peremptory strikes to remove female jurors. Crosby-White challenged the State's use of its peremptory strikes. In response, the State proffered its reasons for removing each juror. For one of the jurors, R.A., counsel for the State could not "remember the exact reason" but asserted that R.A. was "a big no right away due to one of her

1

responses in voir dire." The magistrate court denied Crosby-White's challenge to the State's use of its peremptory strikes.

Ultimately, the jury found Crosby-White guilty of the charged offense. Crosby-White appealed to the district court, asserting that the magistrate court erred in denying her challenge to the State's use of its peremptory strikes.[1] The district court affirmed. Crosby-White again appeals.

## II.

## STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate division, we review the magistrate court record to determine whether there is substantial and competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *State v. Korn*, 148 Idaho 413, 415, 224 P.3d 480, 482 (2009). However, as a matter of appellate procedure, our disposition of the appeal will affirm or reverse the decision of the district court. *State v. Trusdall*, 155 Idaho 965, 968, 318 P.3d 955, 958 (Ct. App. 2014). Thus, we review the magistrate court's findings and conclusions, whether the district court affirmed or reversed the magistrate court and the basis therefor, and either affirm or reverse the district court.

## III.

## ANALYSIS

Crosby-White asserts the district court erred in affirming the magistrate court's denial of her challenge to one of the State's peremptory strikes. Specifically, Crosby-White asserts that the State failed to present a gender-neutral reason for striking R.A. and that a statistical and comparative juror analysis, combined with what Crosby-White characterizes as the State's "ambiguous misrepresentation of the record," shows that the State's peremptory strike was discriminatory. In response, the State acknowledges that it "failed to proffer a specific gender-neutral explanation" for striking R.A. but contends that substantial evidence supports a finding that the State's use of a peremptory strike to excuse R.A. was not discriminatory. Because

---

[1]     Crosby-White raised two other issues on appeal to the district court but, on appeal to this Court, does not challenge the district court's resolution of those issues. Consequently, we do not address them.

2

Crosby-White failed to preserve her arguments for appeal and otherwise fails to show error, we affirm.

A party violates the Equal Protection Clause of the Fourteenth Amendment by exercising a peremptory strike based on a prospective juror's gender. *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 146 (1994). A three-step process applies in determining whether such a violation occurred. *Id.* at 145; *Batson v. Kentucky*, 476 U.S. 79, 96-98 (1986). First, the party asserting a violation, commonly referred to as a *Batson* challenge, must establish a prima facie case that the opposing party removed a prospective juror based on gender. *See Batson*, 476 U.S. at 96. Second, the opposing party must articulate a gender-neutral reason for the peremptory strike. *See id.* Third, the trial court must determine whether the prospective juror was removed based on gender. *See id.* at 98. Throughout this three-step process, the burden of proof remains with the party asserting a violation. *See Purkett v. Elem*, 514 U.S. 765, 768 (1995).

The State concedes that Crosby-White presented a prima facie case of discrimination, leaving only the second and third *Batson* steps at issue. Crosby-White did not, however, present to the magistrate court the arguments she now makes on appeal regarding these two steps. Appellate court review is limited to the evidence, theories, and arguments that were presented below. *State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017). To preserve an argument disputing an opposing party's proffered reason for striking a juror, the party must assert the argument before the trial court. *See United States v. Walley*, 567 F.3d 354, 358 (8th Cir. 2009) (declining to consider defendant's argument on appeal that government's explanation for a strike was pretextual because defendant failed to raise it before the trial court); *United States v. Jackson*, 347 F.3d 598, 605 & n.2 (6th Cir. 2003) (reviewing for plain error because defendant failed to rebut the government's explanation for the strike); *United States v. Contreras-Contreras*, 83 F.3d 1103, 1105 (9th Cir. 1996) (reviewing for plain error because defendant failed to rebut the government's explanation for the strike); *see also Davis v. Baltimore Gas & Elec. Co.*, 160 F.3d 1023, 1028 (4th Cir. 1998) (holding that party waived *Batson* challenge by failing to dispute

3

opposing party's proffered reason for the peremptory strike); *United States v. Arce*, 997 F.2d 1123, 1127 (5th Cir. 1993) (same); *United States v. Rudas*, 905 F.2d 38, 39 (2d Cir. 1990) (same).[2]

When first raising the *Batson* challenge, Crosby-White's counsel did not expressly assert that the State discriminated based on gender. Instead, she argued:

> At this time I would be raising a *Batson* challenge. My client is entitled to have a jury of her peers, that includes women. Women are a protected--sex is a protected class, and it appears that all of [the State's] strikes were women. *So that gives me pause*. [The State] needs to be able to explain why [the State] had them struck for a reason other than their sex.

(Emphasis added). After the State gave its reasons for each strike, the magistrate court asked Crosby-White if she had "anything else [she] wanted to add regarding the *Batson* question." She responded by "making the record" that one of the jurors indicated that she would be impartial despite knowing Crosby-White's counsel. This clarification of the record had to do with the State's reason for striking one juror, which was that the juror might remember her connection with Crosby-White's counsel midway through trial. Crosby-White's clarification, however, rested on an erroneous recollection of the record. During voir dire, Crosby-White's counsel informed the juror that they both were on a dance team in college and asked the juror whether that would "impact [her] ability to be impartial." The juror responded by saying, "I don't know you." The juror did not, as Crosby-White represented to the magistrate court, "indicate it would not impact her ability" to be impartial. Crosby-White's erroneous recital of the record did not rebut the State's reason for striking this juror. Even if construed as rebuttal, Crosby-White does not assert this argument on appeal and, consequently, has forfeited it. *See State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966,

---

[2] We recognize that, in one opinion, the United States Supreme Court conducted a comparative-juror analysis when addressing a *Batson* challenge despite the argument not being raised before the trial court. *See Snyder v. Louisiana*, 552 U.S. 472, 483 (2008). However, the Court noted that the state supreme court had not held that the comparative-juror analysis was "procedurally defaulted" but, instead, had conducted its own comparative-juror analysis on appeal. *Id.* at 483 n.2. Because the Court deferred to the state court's application of its procedural rules, the Court's ruling in *Snyder* did not create an exception to a state's preservation requirements. *See Walley*, 567 F.3d at 358. Consequently, to preserve an argument for appeal, a defendant must assert before the trial court the argument (including an argument based on a comparative juror analysis) disputing the State's proffered reasons for striking a juror. *See State v. Ish*, 166 Idaho 492, 509, 461 P.3d 774, 791 (2020).

970 (1996) (noting that a party forfeits an issue on appeal if either authority or argument is lacking). This attempted clarification was the only response to the State's reasons for striking the four female jurors. Notably, Crosby-White did not assert that any of the State's reasons were pretextual or raise any of the arguments regarding the second and third *Batson* steps that she now asserts on appeal.

In her reply brief, Crosby-White contends that "she was not provided [an] opportunity" to present a comparative-juror analysis, which forms the basis for one of the arguments she asserts for the first time on appeal.[3] We disagree. As noted above, the magistrate court asked Crosby-White for further comments after the State gave the reasons for its peremptory strikes. This provided an opportunity for Crosby-White to make an argument based on a comparative-juror analysis, as well as any of the arguments she now asserts on appeal. Because Crosby-White failed to argue that the State's reasons were pretextual, her arguments on appeal regarding the second and third *Batson* steps are not preserved.

Even if preserved, Crosby-White's arguments fail to show error. In addressing the second *Batson* step on intermediate appeal, the district court held that Crosby-White failed to show "how the [State's] proffered responses" for all four jurors "were discriminatory on their face." On appeal, Crosby-White asserts the district court erred on the second *Batson* step only as to juror R.A., thereby forfeiting consideration of whether the district court erred on this step as to the three other jurors subject to the State's peremptory strikes. *See Zichko*, 129 Idaho at 263, 923 P.2d at 970. Consequently, we limit our analysis on the second *Batson* step to the State's proffered reason for striking R.A.

---

[3] On a related note, Crosby-White asserts that the magistrate court "never proceeded to step three" of the *Batson* process. Following Crosby-White's comment attempting to clarify the record, the magistrate court remarked, "I think that the State--I did a little research and I think the State did what was necessary to justify or explain [its] reasoning, so I don't think there is a valid *Batson* challenge. Objection is noted." It is well settled that in order for an issue to be raised on appeal, the record must reveal an adverse ruling that forms the basis for assignment of error. *State v. Huntsman*, 146 Idaho 580, 585, 199 P.3d 155, 160 (Ct. App. 2008); *State v. Amerson*, 129 Idaho 395, 401, 925 P.2d 399, 405 (Ct. App. 1996). Thus, if Crosby-White's characterization of the magistrate court's remarks is correct, then she failed to obtain an adverse ruling on the third *Batson* step, providing an additional basis for not considering the arguments she now raises on appeal regarding that step.

For the second *Batson* step, the proffered reason need not be "persuasive, or even plausible." *Purkett*, 514 U.S. at 767-68. Instead, the reason must be facially valid and "not deny equal protection." *Id.* at 768-69. The reason will be deemed gender-neutral unless a discriminatory intent inheres in the reason. *Id.* at 768. However, a party does not "satisfy [its] burden of production by merely denying that [it] had a discriminatory motive or by merely affirming [its] good faith." *Id.* at 769. Our review of the second *Batson* step is de novo. *State v. Ornelas*, 156 Idaho 727, 732, 330 P.3d 1085, 1090 (Ct. App. 2014).

For juror R.A., the State offered the following reason for its strike:

> And then finally, [R.A.], I had a direct no from her. I can't remember the exact reason. She was the first person I struck. And that was--honestly I can't remember what she said, but I had a big no right away due to one of her responses in voir dire. I'm sorry, I don't remember exactly what the reason was. She was a hard no based on a response she gave.

On appeal, the State "acknowledges that [it] failed to proffer a specific gender-neutral explanation for the dismissal of prospective juror R.A. during the second step of the *Batson* analysis" and that it "instead generally denied any improper purpose." This concession, however, does not establish a "per se violation of *Batson*." *See Gonzalez v. Brown*, 585 F.3d 1202, 1208 (9th Cir. 2009). Instead, the State's failure to articulate a specific gender-neutral reason becomes evidence of discrimination considered under the third *Batson* step. *See Gonzalez*, 585 F.3d at 1208.

The third step requires an assessment of whether purposeful discrimination motivated a peremptory strike. As part of this assessment, a trial court can consider a variety of factors, including a party's disparate questioning of jurors, a history of a party's preemptory strikes in past cases, a comparison of jurors, a party's misrepresentations of the record while defending a strike, and a party's statistical use of strikes. *Flowers v. Mississippi*, ___ U.S. ___, ___, 139 S. Ct. 2228, 2243 (2019); *State v. Ish*, 166 Idaho 492, 505, 461 P.3d 774, 787 (2020). When the party raising the *Batson* challenge fails to alert the trial court to alleged similarities between jurors, such a failure leaves the reviewing court with "a cold appellate record [that] may be very misleading." *Snyder v. Louisiana*, 552 U.S. 472, 483 (2008). In that scenario, we "must be mindful that an exploration of the alleged similarities at the time of trial might have shown that the jurors in question were not really comparable." *Id.* Because the third *Batson* step involves the credibility of the party who

made the strikes, the party's demeanor will often predominate in the analysis. *Id.* at 477. On appeal, we generally defer to a trial court's credibility determination. *Id.*

Regarding juror R.A., we recognize that (as Crosby-White notes) a "prima facie showing plus the evidence of discrimination drawn from the state's failure to produce a reason" for a strike "will establish purposeful discrimination by a preponderance of the evidence in most cases." *Paulino v. Harrison*, 542 F.3d 692, 703 (9th Cir. 2008). The circumstances of this case, however, present an exception to the general rule. The State did not represent that it could not remember a reason at all but, instead, that it could not remember the precise response from R.A. that led to the State's strike. Considered on its face and in isolation, this explanation fails to give a gender-neutral reason for the strike, as the State acknowledges. However, when considered in connection with statements during voir dire, the State's explanation provides a plausible valid reason, diminishing the discriminatory inference drawn from the failure to remember the precise response.

During voir dire, the State asked jurors if they disagreed with a quote that "omission is the most powerful form of lying," a position consonant with the State's theory of the case. The following dialogue ensued when R.A. responded:

> [R.A.]: I don't know if I can comment really. I mean it is, I guess, a form of lying. But you are just like, I [am] avoiding it right.
> [State]: I think what we are getting to is you want the context, right?
> [R.A.]: The most powerful, no.

R.A.'s initial agreement that omission is "a form of lying," though somewhat favorable to the State, was qualified with "I guess," indicating reticence or hesitation. Her latter response, however, directly disagreed with the concept that omission is the most powerful form of lying, rendering it plausible that this response furnished the "hard no" for the State in deciding to strike R.A. Consequently, the inference of discrimination based on the State's failure to recall the precise response is diminished. In addition, as the State notes, this negative inference is further diminished by the State's articulated nondiscriminatory reasons for the three other jurors it struck. *See Gonzalez*, 585 F.3d at 1210 (holding "the fact that the prosecutor could articulate coherent reasons" for her strikes on one day "makes her explanation that she simply could not remember why she had excused the first juror" on the day prior "more believable"). Thus, the inference of discrimination stemming from the State's failure to articulate a specific gender-neutral reason is minimal.

7

Crosby-White counters that "this rationale was never provided to the magistrate court." Specifically, she notes opinions observing that an appellate court should not postulate possible and valid reasons for the strike that were not offered by the party defending against a *Batson* challenge. *See Miller-El v. Dretke*, 545 U.S. 231, 252 (2005); *Gonzalez*, 585 F.3d at 1207. Here, however, the record supplied a plausible explanation for the State's proffered reason for striking R.A., not an entirely new reason. Thus, the opinions cited by Crosby-White are inapposite.

For two of the other female jurors removed by the State, Crosby-White asserts that comparing these two jurors to jurors who were not removed reveals that the State's proffered reasons were pretextual.[4] But, as the State notes, the "transcript does not definitively identify the speaker of every statement made during the voir dire process." It is the responsibility of the appellant to provide a sufficient record to substantiate his or her claims on appeal. *State v. Murinko*, 108 Idaho 872, 873, 702 P.2d 910, 911 (Ct. App. 1985). In the absence of an adequate record on appeal to support the appellant's claims, we will not presume error. *State v. Beason*, 119 Idaho 103, 105, 803 P.2d 1009, 1011 (Ct. App. 1991). If jurors are not clearly identified during voir dire, an appellate court may "lack sufficient information to conduct a comparative juror analysis." *Ornelas*, 156 Idaho at 738, 330 P.3d at 1096. Although many of the prospective jurors' statements in Crosby-White's case were identified, there were statements that came from unidentified jurors. For example, one unidentified juror remarked that Crosby-White "needs to defend herself if she wants to be proven innocent." Although the magistrate court promptly remedied the erroneous notion by instructing the jury about the presumption of innocence and a defendant's right not to testify, and the unidentified juror agreed to follow those instructions, the juror's remark indicates a bias unfavorable to a nontestifying defendant. Other statements made by unidentified jurors were not favorable to the State. When asked if anyone disagreed with the proposition that "withholding of information that is obviously pertinent to the case is a form of obstruction," one unidentified juror responded, "If they don't ask the question, you don't have to answer." Without knowing who made these (and other) statements, it could be that the two

---

[4]    As noted above, Crosby-White forfeited consideration of whether the district court erred as to these jurors as it concerned the second *Batson* step. This forfeiture, however, does not extend to the third *Batson* step because Crosby-White presents arguments on appeal regarding these jurors as it concerns that step.

removed female jurors gave unfavorable statements and that male jurors who were not removed gave favorable statements, giving the State valid bases for its strikes. In short, we cannot conduct a meaningful comparative juror analysis on appeal. Consequently, we decline to consider Crosby-White's arguments comparing responses from the two other female jurors with remarks from other jurors.

Crosby-White also asserts that the State misrepresented the record, providing additional evidence of discriminatory intent. A party's misrepresentation of the record while defending a strike "supports the inference that the proffered reason is pretext." *Ish*, 166 Idaho at 508, 461 P.3d at 790. If it is unclear whether a misrepresentation occurred, an appellate court will "take the ambiguous nature of the record into consideration." *Id.* at 508, 461 P.3d at 790. When responding to the *Batson* challenge, the State prefaced its reasons for striking each juror by representing that its "intent was not to strike women for being women" and that it "actually was going to strike [a male juror] as well, that was going to be [the State's] second strike." Crosby-White asserts this misrepresented the record because she removed this male juror on her second strike, providing the State an opportunity to strike this male juror on its second strike.

Crosby-White's assertion, however, rests on a claimed fact unsupported by citation to the trial record. This Court will not search the record for errors when an appellant fails to provide citations to the record. *State v. McDay*, 164 Idaho 526, 528, 432 P.3d 643, 645 (2018). In support of her assertion that this male juror was her second strike, Crosby-White cites not to the trial record, but to her brief to the district court on intermediate appeal. In that brief, Crosby-White claimed that she "struck the [male juror] on [her] own second strike, after the State had already used two of its four strikes." But, like her brief on appeal to this Court, Crosby-White failed to provide any supporting citation to the trial record in support of this assertion. Crosby-White's citation to an intermediate appellate brief does not satisfy the requirement to provide citations to the trial record. Because Crosby-White's misrepresentation argument hinges on this unsupported fact, we need not consider the merits of this assertion.

This leaves Crosby-White's assertion that the State's statistical use of strikes in this case--four of four strikes removed female jurors--supports an inference of discrimination. As Crosby-White admits, statistical evidence is "strong evidence of discriminatory intent" but, standing alone, "is insufficient to find clear error." *Ish*, 166 Idaho at 504, 461 P.3d at 786. We

9

hold that this statistical evidence, combined with the minimal inference of discrimination from the State's failure to recall the precise response from R.A., still falls short of showing clear error. Consequently, Crosby-White has failed to show that the magistrate court erred in denying her *Batson* challenge.

## IV.

## CONCLUSION

Crosby-White failed to preserve the arguments she now asserts on appeal and, in any event, has failed to show the magistrate court erred in denying her *Batson* challenge. Thus, Crosby-White has failed to show that the district court erred in affirming the magistrate court's denial of her *Batson* challenge. Accordingly, the decision of the district court, on intermediate appeal from the magistrate court, affirming Crosby-White's judgment of conviction for false reports is affirmed.

Judge GRATTON and Judge BRAILSFORD, **CONCUR**.